Case No. 12 at 7139 NL, Act Now to Stop War and End Racism, Coalition NL v. District of Columbia Appellant, Mr. Schifferle for the appellant, Mr. Vanderheep Dean-Hiller for the appellee. Mr. Schifferle for the appellant. Good morning. Good morning. Counsel for the appellant, before you start, I just want to make one statement for the record. On pages three and four of your brief, you refer to the Corporation Counsel as a female. Corporation Counsel, at the relevant date you're discussing, was a male. Oh, well, I apologize. That's all right. You're talking about Lou Robin's opinion. He was a male. Okay. Okay. Thank you. Good morning. May it please the Court, Congressman Schifferle. For the District of Columbia, I would like to save five minutes, if I could, for rebuttal and response. This Court should reverse the summary judgment and sanctions rulings against the District. First, massive is law standing because, in light of the closure announcement, it has not shown that it continues to exist and still has a concrete, incredible intent to poster in violation of the regulations. Alternatively, the regulations do survive First Amendment challenge because the generational limit on event-related signs is narrowly tailored, content neutral, and serves the interest in preventing litter and blight caused by the medium of posting. In addition, it survives the Fifth Amendment challenge. First, massive has not shown that it intends to engage in conduct which would give rise to a vagueness concern. And, in any event, the regulations are sufficiently clear about what is prohibited. And the sanctions order should also be reversed because the District's discovery requests were consistent with the rules of civil procedure and a reasonable reading of the Court's scheduling order. Mr. Schifferle, why is Imam Gray's affidavit not adequate to respond to the news article that you found and put in the record regarding the existence or not of massive? Because, first of all, it is massive's burden to establish standing, and it would have to do so through evidence, and conclusory affirmations, these sort of vague, speculative, some-day intentions are not sufficient to establish standing. We do have the context here of massive announcing that it had closed in the final email to supporters. In light of that, and all of that, massive had to come forward with something more specific than the conclusory statements in that affidavit. Well, we often, in these standing areas, rely on these affidavits. And this October 2013 affidavit is quite specific and says very specifically that there is this organization and they intend to poster, and then they have an example after the injunction went into effect of actually putting a poster on a lamppost and put a picture in the record. And I wonder, you say they haven't proven, what more would they have to prove? Because they say, you know, the website email you rely on on its face shows that that was incorrect. Well, there are a lot of points there. First, I would note that there is nothing in the affidavit that indicates that Mr. Gray has the authority to speak for massive, that he holds a particular position within the organization, or he's been authorized to speak for by massive. Although you never called into question the article that you rely on identifies him as the leader of the organization. At that time. But I think it's clear in the affidavit that he does not hold that position any longer. At least it hasn't been asserted that he did. The organization puts, at least that's what the organization itself says. I think it's interesting to say that he's no longer the head of it. I don't think there's anything that you've proposed calling that into question. That he is the head of it? Yeah. Why call that into question? Because he doesn't identify himself in the affidavit subsequently. But you haven't called that into question. If I'm representing the Sierra Club in litigation and you come in the Court of Appeals and say, you don't exist anymore. Prove it. And they haven't proved it in the district court. Do they have a burden to prove it? I mean, it's only if you've done something that actually calls that aspect into question. Otherwise, proving standing is a huge undertaking. Well, I think. And you have called into question, I gather, the existence. And that's directly addressed in this. Massive has been an incorporated non-profit association, engaged in non-profit similar at all times. And there have always been two or more persons. It says in the affidavit. So addressing the thing that you raised, the question that you raised, it does seem to respond. Okay. But we do have a closure announcement. Massive announced its closure. I'll point out the affidavit doesn't dispute the reason given for the closure. And that was that Massive didn't have the resources to continue its advocacy work. There was no real retraction. There's a leader comment posted to the article. And there's this other unspecified announcement two months later that only cites the litigation as the rationale or the reason that Massive continues to exist. I don't think that's sufficient. We don't even have basic information. Who directs, who manages this organization? We don't get that about Sierra Club either. But paragraph three of this October 2013, why isn't that sufficient? In other words, isn't that saying nothing's changed? Just one second. Yes, I mean, it does state that it's an unincorporated nonprofit association, that it's continued to exist. But what are the specifics to support that in light of the closure announcement? Well, the specifics are, I think PC law is, and you don't really tell us what the benchmark should be, but DC law on unincorporated nonprofits is pretty minimal. And it says you have to have two or more persons. And the next paragraph alleges two or more persons. Well, it doesn't identify who that other person might be. It doesn't? Do you doubt that there are two or more persons? And on what basis? Well, because there was the closure announcement. They're denying it. And the closure announcement also wasn't by someone in authority, was it? It wasn't by the head of the organization. Well, we don't really have an explanation. I mean, there's just the conclusory assertion it was a departing staff member without authorization. No detail, no explanation. And so even assuming the Massachusetts put forward sufficient evidence to establish its standing, there's still the question of whether it has ultimately proven that on the merits. And so that would require a remand for additional fact-finding. The district hasn't even had an opportunity to take a shot. Additional fact-finding on what? Regarding these issues. There are a lot of them. These issues. Then tell me one more thing that I had before I asked the question. Yeah, sorry, Ryder. So the nature of the closure. What exactly happened? How did it reform or continue to exist? Who manages it now? Who directs it now? I understand that it's not very uncommon for us to send back these pending questions for further development. But you're asking for what sounds like more than what we usually expect to get. I understand that, Your Honor. But it is the fact that there was this closure announcement. It wasn't even disclosed at the time to the parties, to the court. We only happened to discover it upon appeal when we weren't in a position to sort of test. All right. Paragraph 12 of this October 2013 affidavit addresses this directly. Yes, Your Honor. But that was the point I was making before. And it says on the face of the announcement on which you're relying, it contains evidence of such correction. Well, as I said, that was a reader comment. It's not verified who this person is, that this person has authority to speak for Massive. But he's essentially adopting that. Well, I don't think it's sufficiently clear. You know, it might have passed a burden. I don't think they've met that burden. Even if there were sufficient evidence, I think it still has to be tested for the district to have an opportunity. Yeah, I mean, it's a tricky area because, of course, the plaintiff does have the burden. We don't dispute that. And because it's subject matter jurisdiction, we have to be sure of it at every stage. But there's also this flip side where if you raise something on appeal and you raise it based on something that doesn't have the kinds of indicia of credibility that you're demanding of the plaintiff, you found an article on the Internet that appears to be highly disputed. And you're saying, well, that's enough to create a new burden on issues that they never thought were in dispute. And so, I mean, do you see the issue for us that if we say that's enough, then a plaintiff who's trying to keep up with its burden to prove as a factual matter that it has standing will have to do all kinds of anticipatory, well, look, here are our bylaws. And, you know, we're going to keep you up to date at every minute that we're not going out of business. And let us tell you who the people are. And this is our governance. You know, it's not calling to question. It seems a little. Yeah. No, I understand your point entirely, Your Honor. I mean, our intent is not to demand sort of an unnecessary burden on the plaintiff. But I think what is required is more than what has been shown here. Or at the very least, allow the district to test the veracity of these claims through discovery, through an opportunity, which it did not have. You mentioned the word discovery. Are we pretty well through with this part of the subject? I asked my colleague if I could move to the question of the sanctions. The court sanctioned. Now, were you not in the initial discussion of sanctions with the court on the position that you didn't need discovery? Did I misunderstand your question? The district's first position was that there was no need for discovery by either party. Alternatively, if the court were to allow discovery, the district's proposed scheduling order did request discovery by each party. The order that you issued did not provide for discovery by the district, right? It did not expressly allow it. That's correct. But it's our position that express authorization. Your position would be that in the absence of a provision in the order on discovery, the rule would be the default position. You wouldn't have to sign a lot of the rules. Right, because the rules do not require express authorization to take discovery. They expressly permit it, even without a provision. I'm just making sure I fully understand the position of the court. Okay, thank you. What was the sanction? I'm sorry? What was the sanction that you're appealing? It was about a $15,000 fee award. So to address further the issue of the sanctions, yes, even under the court's own interpretation of the scheduling order, it was not an express prohibition on the district. The district court says these scheduling orders, there's a purpose to them. The district submitted a report that, taken in context, there was nothing for the district to discover, but there were things for the plaintiffs to discover. And as I read the district court's two opinions, the initial order and then the denial of your motion to reconsideration, it viewed the notion that you could view its order on discovery out of context was virtually ridiculous. That the parties had submitted the report to the district court. The district had taken the position it didn't need discovery. The plaintiff said they wanted this particular discovery, and the district court granted the plaintiff that discovery. And that's the context in which the sanction occurred, and that the district could have clarified the matter by asking the court, you know, in writing, does this mean that the district may not proceed with discovery? And the rationale, as I understand it, is that your position would undercut the purpose of the rule establishing this order in which the case is to proceed henceforth. Well, on several points, the district did say neither party should have discovery, but if discovery was to be allowed, the district reserved the right to take discovery. There's no claim that the district waived the right to take discovery. The plaintiff never asked that the district be precluded from taking discovery. There's no dispute that the discovery requests that the district made were relevant and proper. Yes, the position is that this order that didn't provide for your discovery came after the parties in court had stated that the district didn't need discovery. Well, yes, Your Honor, but again, the district's position was that neither party needed discovery, but if the court was going to allow discovery, then the district requested in the proposed scheduling order that each party be permitted to take discovery. Well, did you raise that position with the district's court upon the issuance of the order that didn't give you discovery? No, Your Honor, no. You attempted to take discovery later, correct? Right, because it was our reading of the scheduling order that we were permitted to take discovery. It didn't expressly preclude the district's right to take discovery. I would point out that sanctions are not authorized unless the order is unambiguous or the district's position was substantially unjustified. Even assuming that we're wrong in the reading of the scheduling order, sanctions wouldn't be warranted. If, as I said, the district's reading was a reasonable one, the order was not unambiguous, and I think for the reasons that I stated, that standard is not met here. I would like to move on to the merits, then, if the Court would like. Regarding the First Amendment claim, the regulation is content-neutral. It does not discriminate based on topic or subject matter. It is just like a time restriction for oral speech that would be subject to intermediate scrutiny. And, as Justice Alito's concurring opinion in Reed states, that the time restrictions on signs advertising a one-time event are content-neutral for those reasons. Well, let me ask you, just looking at the majority opinion, the language is pretty unyielding. Until the Court comes to its discussion of Vincent, and where the majority is saying, and this is Part 4 of the opinion in Reed, that it says the town has ample content-neutral options, and it cites Vincent for the proposition that, on public property, the town may go a long way toward entirely forbidding the posting of signs, so long as it does so in an even-handed, content-neutral manner, citing Vincent. And then when you look at Vincent, it's talking about a total prohibition against temporary signs on public property, where there has been this judicial determination about safety and aesthetics. We don't have that here, do we? And is that why you're seeking a remand? You say, if strict scrutiny is to apply, and you're arguing that you have met strict scrutiny here. Right, if the test is strict scrutiny, yeah, we have asked for a remand in order to be able to make that case for strict scrutiny. But it's our position that there is no remand required, because the test is intermediate scrutiny, and this Court can reverse on that basis. So what weight do we give to Justice Alito's concurring opinion? Only two justices joined him. Right, but Justice Alito and the other two were three of the six in the majority opinion, and Justice Alito's concurrence is not taking a separate position from the majority. The language, I think, of that opinion makes clear. It's just explaining the majority opinion. It's not taking any different position than the majority. I understand, but when you look at the majority opinion, at some point it seems to give what you're saying, and then it takes away what you're saying. Yeah. Well, I mean, I would point out the nature of the sign code in that case. It was far more content-based, obviously content-based. Looking at the district's particular regulation, it is nothing like the sign code that was invalidated in Reed. I would point out, too, in Reed, the event-related signs were subject to restriction not only based on duration, but also things like size and number of location. We're not arguing for that distinction with respect to event-related signs. The only thing is the time restriction, which, as I pointed out, Justice Alito in his concurrence specifically says that this would be content-neutral, and I think that explains the majority opinion. Well, the strongest statement I could find in the majority opinion is the sentence that says, talking about the town of Gilbert, where it says, nor do the sign codes' distinction hinge on whether and when an event is occurring. Then it goes on to say that still may not pass muster. I guess the question is, when it comes back to Site Vincent, where there's an entire ban, it's difficult to say that the one part of Justice Alito's concurring opinion on which you're relying, as Justice Kagan points out in her separate opinion, is difficult to reconcile with the majority opinion. But Justice Alito is explaining the majority opinion, and he's part of the majority as well as the other two justices, so I think that is the controlling interpretation of the majority opinion. Well, but the majority had six justices on it. Correct. So this is not a question of where we're looking to the concurring justice as the controlling opinion. No, I'm not suggesting it's a controlling opinion. I'm only suggesting that it explains the majority opinion. It's not taking any different approach from the majority opinion. It's an explanation. I would point out, too, that Reed does not overturn Hill versus Colorado. It does not overturn Renton. I think those cases show why the district's regulation here is content neutral. The Supreme Court in those cases rejected sort of an overly formal definition of content-based, which is what the plaintiffs are relying upon here. There's no risk, and no risk has been shown of any suppression of disfavored speech, which was part of the analysis in the majority opinion. And, Mr. Schifferle, is the city's interest that once an event has passed, nobody's tending the signs, and so they're more likely to end up in the gutter and be littered, be abandoned? Right, right. If the sign has ongoing relevance, people are going to be tending them. Right. Or that by design, when it's first posted, it's not designed to persist beyond the date of the event. Yeah, so that leads to the specific concern about blight as those signs deteriorate, and litter as those signs deteriorate and then fall off, become detached from the landfill site. What do you do or say with respect to the sign referenced in the material from your opposing account, where the sign just gives the name of the county? Is that event-related, or is that non-event-related? Well, it may be event-related, even though the date, time, location of the event is not specifically written on the sign. It can still be event-related. Does that support their proposition that this is not going to continue to be valid? No, Your Honor. And you say it may be event-related. That sounds a little vague, doesn't it, John? Well, I just meant that there's more information that the inspector can gather. If it turns out there's an election in a few days, then that might be evidence that would be put forward to support the violation. But just because the inspector can gather different types of information, it's not limited to that. Now, give me a moment. If the sign is non-event-related, how long can it stay up? 180 days. 180 days. So why do we need this separate distinction on it being event-related that puts it to X days, or what, 30 days after the event? Does that make everything separate in 180 days, or can you get about as much done? Well, no, it wouldn't be as narrowly tailored as to the interest I was just describing to Judge Pillard, that there is this particular concern about blight and litter with respect to event-related signs. In fact, the district court saw that that was straightforward. I mean, it specifically used the word straightforward and said that a poster for an event that has already occurred is more likely to constitute litter and blight than a poster for a future event or a general political message. That was the district court recognizing the straightforward rationale. And so that single durational across-the-board limit would not be as tailored to that particular interest. And as we pointed out, if we are limited to just a single limit, then that forces the district in order to accommodate that interest specific to event-related signs to bring down the 180 period to, say, 60 days, which was what it originally was under the regulations. We pointed to the Williams case. I think that explains why there is no vagueness concern here, that what has to be proven is clear, that it's related to a specific event. How that might be proven, you know, that doesn't raise the vagueness concern. Well, they say that there's a due process aspect of the vagueness, the enforcement discretion, and I have to say the record is not great for you on that with the officers who are in charge of enforcement kind of saying it's whatever I say. Would it be appropriate for us to give a narrowing saving construction to that and say this is really just about determining an event like, you know, Easter egg hunt, Easter's past, election, elections past, Passover, you know, assembly, Passover's past? Or is it something more than that? No, absolutely. I mean, to the extent that there is a limiting construction that would be required to preserve the constitutionality of the regulation, this Court should adopt it, and we would agree with that. Do you have any proposals in that regard? Well, part of the problem is that MASSIVE hasn't alleged any conduct that it would engage in that would even cause a vagueness concern, and that was our argument that we raised. That precludes them from even raising this claim, but it also makes it difficult to address that issue because I don't have an actual scenario that's even proposed where we would need to consider a limiting construction. We cited the Holder case, Holder v. Humanitarian Life Project, which goes to that point that the plaintiff does not have the ability to challenge the vagueness of a statute when it would be clear as applied to them. And here, again, the plaintiff hasn't alleged, MASSIVE hasn't alleged that it would engage in conduct or has a concrete intent to engage in conduct that would raise a vagueness concern. What it has alleged, to the extent it has alleged any conduct that it intends to engage in, it's clear that the regulation as applied to them would prohibit what they intend to do. Well, humanitarian law is really about the vagueness with respect to notice to the people subject to the law, and I think they're raising a slightly different claim that it's vague in the sense of affording too much enforcement discretion. I think in light of their characterization of what happened to answer, they're quite concerned about the enforcement discretion. Do they need to be subject to improper enforcement discretion in order to be able to raise that vagueness challenge? Yes, yes, they do, because it can't just sort of be it's vague in the abstract, even though it's applied to them, it's not. And I would point out the answer violations had to do with a different provision of the regulations entirely, the use of adhesive that didn't allow easy removal or removal without damaging the fixture. So that's an entirely different regulation. The fact is, too, that Masset has an opportunity, or any individual has an opportunity, when they file a copy of the poster to seek clarification at that point. The poster can still be up for a minimum of 30 days in which clarification is sought, that there is a process, an administrative process, and then ultimately a judicial review process by which the courts can adjudicate any claim that the petitioner or the individual cited might raise regarding fair notice or vagueness of the statute. I see I am over my time. Unless the Court has any questions. All right. We'll give you some time on rebuttal. Thank you, Your Honor. May it please the Court. The district's regulations are an unconstitutional content-based regulatory scheme that impacts First Amendment protected speech under Reed and is challenged throughout this litigation. But I would note as well that the lower court found that the district failed to meet even a lower level of scrutiny, failed to meet intermediate scrutiny, and this Court has the ability to uphold the lower court ruling on that basis, although we would urge the Court as well to reach the issue of the content-based regulations and their failure under Reed. The district has never proffered evidence in this case to meet a compelling interest standard and has never attempted to. Their request now for a remand, were that to be the issue, is inappropriate because the plaintiffs in fact challenged these regulations as content-based, raising many of the same issues and arguments that have been presented in Reed throughout the course of this litigation, which has gone on for more than eight years. And the District of Columbia made its own determination that it would not attempt to respond or proffer evidence to suggest that it could meet a compelling standard. And as the lower court noted explicitly in its own opinion, that were the district to be required to meet a compelling standard, they could not and did not appear to indicate that it thought that it could. Well, what about the district court statement to which counsel alluded about litter and aesthetics being straightforward? That statement regarding litter and aesthetics I think becomes very important and also pointing to Judge Pillard's question about whether or not there are limits that could be placed on the interpretation of the construction of the statute because the issue becomes persistent political relevancy. Now, if we're talking about a yard sale, which is in fact in the Reed court, the question of the concurrence and what Justice Alito is talking about, in the oral argument he's discussing the question of a one-day yard sale. It's not a sign that has persistent political relevancy. In this case, and in the record explicitly, in fact, MASF was posting a sign that was hybrid in nature to the record of JA 536 that says shut down Guantanamo, stop torturing Muslim prisoners, and also references the date of an event. Now, when the date of that event has occurred, that sign does not lose political relevancy. Indeed, to this day, that sign has not lost political relevancy. Is it Fairhaven Hilliard? Yes. We don't have a record of any enforcement. It may be that they'll look at that and say, oh, that's an issue sign. Yeah, it has an event aspect, but hey, First Amendment, we're going to leave that up. You don't have any record that your hybrid signs are going to cause any trouble for you, do you? We do. We have two places, two areas of the record where that is represented. One is before the lower court in the depositions of the enforcement agents. There were repeated depositions where they were presented with hybrid signs, where there was a message of political relevancy, and then also had a date. And the enforcement agents came back with completely different positions at different points in time with different signs indicating that it was up to their discretion that one sign might come down, one sign might not come down, which also goes to the vagueness of the regulations. The other area where this is presented is back to this issue regarding mass theft activities, which were manifest, which were continuing, which notably the district only raised the question and made what we believe is a completely baseless allegation that mass theft didn't exist. It doesn't look baseless. You may win on this. Name calling is not argument. It isn't baseless. They had what looked like a perfectly good reason for raising this question.  I did not mean it as an unsupported pejorative. I meant it based on the fact that at the time that they raised this issue, one, they were looking at a printout that on the face of the printout states that there is not a closure, but two, the attorney general had just been approached by counsel, by our office, advising that mass theft was about to engage in a post-trade campaign and asking them to strike the regulations that they had left on the books even after the court had ruled against them because we were concerned about the enforcement agents' treatment of those regulations. The affidavit here, while we can pick out of it a lot of things, it doesn't have the kind of clarity I've become accustomed to seeing in standing affidavits from Sierra Club or many other groups that we did. Are you asserting here entity standing or associational standing advancing the interests of your or relying on the interests of members? Relying on, pardon me, sir? Relying on the interests of members. An apple-top standing, associational standing. We have many cases on this where the association says we're asserting the interests of our members. Then they have an affidavit from six members who say I go fishing in that water or whatever. We don't have that kind of thing here. This case came before this court previously on the issue of standing, and it was found that Mass Ave. did have standing to pursue these issues. Mass Ave. has alleged standing on behalf of itself, on behalf as well, because it's a facial challenge of the general public that is impacted by this. But I diverted in response because I touched on the standing issue, but to follow up on the question about where in the record. So in the affidavit after this issue was raised on appeal, Mass Ave. then in fact took its hybrid poster, complying with the regulations to have it registered with the District of Columbia offices. And when they took that hybrid poster in, they were told by the enforcement agent in charge there, Nancy Wilson, that in fact it would be subject to the truncated time period and would be forced to come down. Now let me ask you again. I know we're interrupting, but we do that because we're famous for that. I understand, sir. Is it your position that there cannot be a distinction between the issue signs and the event signs, or is it your position simply that the regulation that exists is not sufficiently specific and clear? It is our position that it fails on two levels. One, we view it as unconstitutional, facially unconstitutional, in that it is a content-based regulation that in fact in order for it to be enforced, it requires enforcement based on the actual content of the speech of the sign. But also it fails as a due process matter because it is hopelessly vague And with reference to the first statement, what do you say to the proposition discussed in the arguments of closing counsel and in the records in the district court that a sign that is event-related is a greater danger or hazard, if you would, to estates because the interest is lost in it after the event is over  I would refer again to the example of the sign J536 that was actually posted exists in the record that says shut down Guantanamo. All right, now that's answering a different question. We're on the content-based distinction now. Let's stay on that for a minute. Yes, sir. Get away from the vagueness. On the content-based, why isn't it a legitimate distinction to say that there is a difference between an event-based sign and a political issue sign with reference to the harm or danger to estates and the cleanliness of the community? And that was in fact the question I was answering. I was not moving back to vagueness. With regard to using that sign as an example. No, I don't think that sign is an example. Okay. I'm talking about the general proposition, not does that sign lead one side or the other. You can convince, you can envision a sign that simply has the proposal of Guantanamo. Another sign says on X date we'll have an event about closing Guantanamo. Now, isn't there a, why isn't there a legitimate distinction between the regulatory periods for those two signs? And that's the example that I was going to make, Your Honor, because it's similar to this. That you have a sign that says shut down Guantanamo and you have another sign that says shut down Guantanamo, the same letters, but underneath has a reference to a demonstration. The message of the sign has persistent political relevancy. There isn't a basis to take that sign down short of a period for any other sign that's elected. The sign doesn't have a political message on it. It just refers to the event. Let's get that point. Okay. Quit finding my hypothetical. Okay. And answer my question as to why isn't there a legitimate distinction between a clearly event-based sign and a very non-event-based sign. If the event-based sign is advocating, for example, Your Honor is referring to a non-commercial event-based sign that has no political messaging whatsoever. You were legal. I think you understand what I mean. So to a meeting on closing Guantanamo, May 1, 2016, 8 p.m., Verizon Center. That sign, I would suggest, may have less durational political relevancy as a major call to action, but at the same time, Your Honor, I would say, and the court in Reed actually acknowledges Both signs will be represented. Okay. Let's get the political message out of it. You're finding the hypothetical. We want to answer to that. I am. I'm answering the hypothetical. The court in Reed acknowledges, for example, when you may have a call related to an election that it has ongoing political relevance. They're saying the government cannot make a distinction between the event-related political sign and the issue-related political sign. Is that your ultimate position on this? My position is it's so long as the sign has any political content. Any political content. It has no political content. No political content and no words of political import and no call to action regarding any issue or political issue or handout. We already hypothesized, and you heard it, that the sign says what Judge Rogers said. It doesn't take a position on closing Guantanamo. It simply says, come join our discussion. Now, we've taken the political content out. That's the sign we're dealing with as an advance sign. If the sign has no political content whatsoever, then it would not fall in the context of the First Amendment protections for political speech. This is a yes or no question. Yes. Yes, there can be a distinction between event signs and issue signs. Or no, there cannot be a distinction. Yes, there can if there's no political content. So aren't there – maybe this is not to the point, but aren't there instances in which a sign has political content and people need them to be directed to a certain date and they don't particularly want them to be up after that date? I mean, maybe you could, as a historian or as someone who's – you can't really imagine that a political sign had continuing political relevance because we had a rally on such and such a date or there was a primary election on such and such a date or we did have a meeting about the schools on such and such a date. But in a lot of cases, people don't have that position. That's just not relevant here because, in your view, they might. So it would be up to an entity to decide that it was taking down a sign in a shorter period. There isn't a basis on that for which the government to come in and say that the government inspection agents have decided, based on the content of a sign that no longer has political relevancy, and they are either taking it down or fining someone for leaving it up. What if they allowed you to say when you came in, hey, this is a sign – this is an event-based sign. We don't need it to be up after the event. Or this is a sign that refers to an event, but we think it has continuing political relevance, and so we plan to take care of our signs and not have them become litter, but we want them to stay up. Would that be constitutional, or is there something else wrong with that? I suppose if the district wanted to write regulations that when a sign is registered, someone can check a box and say, I'm seeking to avail myself of a 180-day full posting period, or I'm voluntarily agreeing that my sign should come down after 30 days. There's no reason that the government can't make that request. It becomes when the government itself is making the determination about the political relevancy, about the content, about the speech of the sign. And for the government to make the determination that a sign is litter under circumstances when – I understand your position on that. But in order to put these posters up now, do you have to go and register them? Yes. Nobody's challenging that? We challenge the registration requirement at the lower court based on anonymous speech issues, but the court found that similar to the Job's Witness case, that the registration came after the fact of posting that it wasn't putting a burden on the posting, and it wasn't requiring a person who was posting to be identifying themselves at that moment. We don't need to get to that anonymous question. No, you do not. We do not. You do not. If I may just briefly – I'd like to also just address, and I don't know if the court needs to hear from me on this or not, with regard to the sanctions issue, because the district has represented that it said it reserved the right to take discovery, but in fact, in its own writings, it said it reserved the right to object to plaintiff's discovery request. Throughout the back and forth which was put into the record, they never sought discovery except at the end they submitted this proposed order, and the court did not accept their proposed order. I'm a little concerned about the precedent we might be making on the sanctions for the district taking discovery. If you read this history and leave out one little bit of the record and simply say that the order allowed one party time for discovery, didn't allow the other party time for discovery, and the court held that the second party was subject to sanctions when they tried to avail themselves of discovery, that sounds a bit strange, doesn't it? That would be a broad reading of what actually occurred in this instance, and what actually occurred in this instance is that the district disclaimed the need for discovery. There was back and forth, as there should be, between counsel conferring. There were proposals put before the court in which the district said no discovery. The plaintiff said there should be discovery. The district said if there is discovery for the plaintiff, we reserve the right to object to that discovery. We submitted a proposed order. They submitted a proposed order. The court granted our order, and then the district- Your proposed order did not say specifically the district shall have no discovery. Our proposed order was an affirmative order as to what discovery was being ordered in a scheduling order. So that would be a direct answer to my question is no, that order didn't say that, did it? No, it didn't. There was no reason to take that up. So there's not really a violation of any express term of the order, is there? Your Honor, to follow up that point, what the district did is it propounded discovery against- That's not following up that point. The point I was asking about is there's not really a violation of any express provision of the order, is there? There is, Your Honor. There's an order that explicitly- What is the express provision that they violated? The express provision is that the order- Quote it to me. Go ahead. The order is an order authorizing discovery. That's not quoting the order. Quote the specific part of the order to me if you say they violated it. The order says plaintiffs are authorized. It does not say defendants are authorized. And they prevent the plaintiffs from doing discovery? The order did not say that defendants shall not do discovery, did it? The difficulty is that Rule 26, I mean, discovery is supposed to be something that happens without gatekeeping by a district court. It's already initiated, and that's the background rule. So typically, unless there's been a limitation on discovery, parties have the opportunity to take discovery from one another. And you're right that there seems to be potentially a negative implication in this order that the district doesn't get discovery. But against the backdrop general rule that discovery is available, it's a little hard to stomach the way the district court read it. I would say that the district court, and noting the district court's opinion, goes through in detail. The district court is managing its docket, managing the discovery. We have in front of us an order that does not say the district can't take discovery. We have Rule 26 that says the parties can take discovery, and then also says it doesn't apply back to the order of the court. But here you don't have a specific provision that you can say the district violated. Wouldn't it be a bit strange for the district to affirm sanctions for violating an order that isn't literally violated? Your Honor, I would say that the ability of courts to issue discovery orders and, in fact, to meet and confer requirements, if at any point the district had said it wanted to have discovery, then we would have disputed that. The court did not propose an order. Pardon me? Its order included discovery for the district. The district court did not adopt that order. That's correct. But it was before. The District of Columbia's proposed order was before the district court. And the district is aware that its order was not adopted and then did not seek, it did not file anything with the court. Did you file a proposed order that didn't say the district would have no discovery? We did not, Your Honor. You didn't file a proposed order? I would agree with you. We did not file a proposed order stating that the district did not have discovery. We filed a proposed order in compliance with the meet and confer requirements and the court's scheduling order that laid out the details of the discovery that would exist. And that's what was put forward in this case. And the district did not even, if it had a disagreement with the court's order, not adopting this order, but adopting our order, that it had the ability to go to the court and seek clarification or seek a different order. But your order didn't say they couldn't have discovery. That would suggest, Your Honor, that there's no point to a discovery order at all. Yes, there would have been a lot more point to it if you had filed the provision that you won't have discovery. The court, in its earlier order, had said that, in this case, the district will be given opportunity to explain its position. It made it clear that the discovery was flowing against the district. There was no basis upon which to seek discovery of the plaintiff. And the court acknowledged that, too, that the discovery that the district was putting forward actually had no basis or legitimacy. I gather you are not arguing that there was bad faith by the District of Columbia, are you? We do believe that there was bad faith by the District of Columbia when one reads the communications back and forth. That its reading of the order was not reasonable? The reading of the order was not substantially justified at all. So the rule is that even though the order has nothing explicit about it, if the negative precedent, negative pregnancy is there, you could be sanctioned? That's what the problem is. Your Honor, not when one looks at the very specific facts which I've heard. I know. You have to know the whole case. And when you read the district court's published orders in the federal rules decision volume, that becomes clear. But if you're trying to say what is the rule that the district court has adopted, it does seem to me it's very different from what other courts have said. That where the order says you can't do X and you go ahead and do X, then you can be sanctioned. But if the order is silent, absent some evidence of bad faith or something like that, a finding by the district court, and the district court didn't make such a finding. In this matter, Your Honor, I would note that it's an abuse of discretion standard, that the court had in front of it all of the communications, its own rulings, everything that would come to its ability to make it a determination. So I believe very clearly that the court was within a sound discretion and sound authority in interpreting its own order, interpreting the context of the communications both between the parties and between the parties in the court and the courts out to the parties. And that that is not a ruling that could be disturbed based on an abuse of discretion standard. I don't believe that it creates some other broader ruling that is problematic. The problem with your judge is everything we do creates a broader ruling. Everything we do is good. And it's going to be a bit hard to find a limiting principle if we say that a party can be sanctioned for violating the spirit of something that isn't in the book. Isn't that going to be a bit hard? I would say in each and every case one looks to the facts underlying the rule to see if that case's facts make that rule applicable to another or subsequent case's facts. And the facts here are very particular. I understand you're evading my question. I don't believe I am. But we're still left with what is the limiting principle if we say that a party can be sanctioned for violating an understanding of an order as opposed to violating a term. I would say that the limiting principle is that a party is obliged to follow the orders of the court, the process of the court. There's a reason that there's a meet and confer process. There's a reason that a court issues scheduling orders. The places could simply not come into play at all. The limiting principle, yes, but you're evading my question. The limiting principle are the federal rules of civil procedure. There's no allegation of a violation of the civil procedure. There was a scheduling order issue. Yes, there was a scheduling order. It doesn't have disprovision in it. It may be the indication of it. It may be the intent of it. But it's rather hard to find a limiting principle for the proposition that we can sanction somebody for violating a provision that isn't there. The district proffered one order and the court granted another. The suggestion that that somehow allowed the district to go well beyond. No, the rules allow the district to go well beyond unless there's an order to the country. There's not really an order to the country. There is an affirmative authorizing order. That is the point of court scheduling orders. But you wouldn't want to be on the other side of this order, of this rule. I mean, that's the real problem here. And the whole point of orders is so everybody's clear as to what the obligation is. And if it's not clear, then you wouldn't want sanctions imposed on you. I think reading the circumstances surrounding, the very particular circumstances surrounding under which these sanctions were ordered completely grounds them in a justifiable determination by the district court. The limiting principle would be where a party has previously indicated it does not need, that discovery is not needed at all. That if the district court issues an order granting one party discovery, it is a violation of that order for the other party to take discovery as authorized by the rules. Yes. And I would add where a party has asked for discovery by, in that order, whatever addressed it throughout the process, but in that order, it submitted an order, its order was not adopted. It may not simply avail itself of an order that was not adopted by the court. Anything further? Court's in motion. Your Honor, the other areas that were not addressed were the plaintiff's dismissed claims at the motion dismiss stage. The cross ratio. We haven't talked about it. Pardon? The cross appeal. The cross appeal regarding Section 1983 claims and the strict scrutiny claims. They are brief, but to the court, the extent that the court wishes to discuss them further. You mean strict liability, not strict scrutiny? Yes. Sorry, strict liability. I apologize. Can I just ask you, going back to the existence of MASSIF and the standing question, is there, can you just explain to us? I mean, I know we can't take what counsel's representations as fact, but what's the story with the confusing news story and then the... And the technical declaration and... I'm happy to explain it, and because you don't need to take counsel's representations as fact, it's also in the record, that MASSIF, after its executive director, Monty Bray, suffered a stroke, had a diminution in fundraising and underwent a restructuring. A staff member who was unauthorized and was no longer going to be employed issued an unauthorized statement, which at the point in time at which it was published or referenced in that newspaper article, you can see on the face of the same printout, there's someone who's on the trustee of the organization. We have the documents, but can you just, so is he now no longer the head of the organization? Is he the head of the organization? He is. He's still a leader of MASSIF. And was he at all times? Yes, at all times, and that's what it says in his statement. And I would point to paragraph five of the October 2013. I have always been one such individual, along with others, who have determined the policies and activities of MASSIF. He just says he participates in the management and affairs. Maybe that's under D.C. law. It was just there was a little ambiguity, given the way that that's phrased. Sure, and that was the phrasing. So the reason that there are multiple affidavits is at each step that the district raised a question, we voluntarily provided sworn affidavits to answer those questions. But the district view was there's nothing that they wanted to go down this path, no matter what was said. And so each of these affidavits was seeking to satisfy the identified concerns of the district claims that it had. So MASSIF not only continued to operate, but as noted, MASSIF at the very time that the district was claiming to this court that it didn't exist, the district was communicating with MASSIF over its posturing. And the fact that it was going to actually impose the 30-day truncated period, even in light of the law being struck at the time of that posturing campaign. In joint, right? Yes, in joint. And so throughout this process, MASSIF has continued, it has undergone restructuring, which is not unusual for any organization in terms of, you know, its funding or its capacities at different levels. But it has always had the capacity and has always continued organizing and has continued its political activities and it was continuing its political activities through this process. There's never been a point at which it was not. So I don't know the law on this, but is it registered somewhere with the district? So this is the requirement. Does the district's uniform unincorporated nonprofit association act? Yes. There is, in fact, no registration requirement. That's never changed. Right. So it is not registered anywhere with the district. I just want to be clear. Not to my knowledge is there a registration requirement that would be registered. The act, in fact, defines the nature of an unincorporated association based on the fact that it acts, that it does things as, you know. Prior to this act, or without this act, it used to be the norm that an unincorporated association was not suing interest versus litigation. I take it this act is adopted a lot of places now, but is there any remaining questions as to whether an unincorporated association can be asserting interest in its own name and person? None that I'm aware of at all. And, in fact, across the country. This is a good bit of old law, but that's before those steps. Yeah, and this is widely recognized and routinely used in litigation, too, where there are unincorporated associations that, particularly in the context of free speech activities, would have a need to... All right. Thank you. And, Your Honor, again, we haven't discussed this. But you'll stand on your briefs as to the process? That's fine. Yes, unless Your Honor has any questions regarding this. Thank you. Thank you, Your Honor. On the sanctions issue, the district court specifically did not base its sanctions ruling on any bad faith by the district. I would suggest that affirmance of that sanctions ruling would create dangerous precedents. Here, the district was precluded from taking any discovery at all. While the other side was permitted to take discovery, that one-way discovery... But you said you didn't make discovery, didn't you? That's because not a party needed discovery. But we did request in the scheduling order that each party be permitted discovery in the alternative. And you can imagine other situations where the scheduling order might be silent, where the party has asked for a request for admission, and it's not included in the scheduling order. Does that bar requests for admission? The rules of civil procedure permitted the discovery that the district took, absent an express statement in the scheduling order to the contrary. On the mootness issue, there are legitimate questions still. They're not answered by the affidavit. The affidavit is unclear about whether Mr. Bray still holds a leadership position. It's unclear. Even though unincorporated associations can exist, they still have to form at some point in time. There has to be an actual legal existence, an agreement that brings it into existence. We don't know what that agreement was, who made it, when. Do you need to know all that? I mean, D.C. law, an unincorporated nonprofit association is an unincorporated organization consisting of two... I'm reading the law. Right. Consisting of two or more members joined under an agreement that is oral, in record, or implied from conduct for one or more nonprofit purposes. It's a legal entity for mixed members. It has perpetual duration. It may be dissolved by approval of its members, by its managers, or by court order if it can't be located for three years. None of those things... It hasn't dissolved itself. You've made no showing that it's dissolved itself. So it did exist, and according to this quite lenient definition, it's in perpetual existence. No? Well, there has to be two members. We don't know the identity of the second member. The affidavit has said it has to be two members. The affidavit has said there are. Right. We just don't know the identity. Do you have a reason to doubt that? Any reason to doubt that? Yeah, we didn't learn of this disclosure announcement until we discovered it. I understand. What do you mean? And so that generates a degree of skepticism, and as the opposing parties... What about that point that people have been dealing with the district on their signage plans? Well, that would be counsel and perhaps Mr. Bray, but just because Mr. Bray invokes the meaning, it has a legal existence. I would also point out that even if it exists in some sense, there still has to be that course of conduct that it intends to engage in that is concrete and specific that would give rise to imminent harm. So what do you mean by legal existence? Because that's why I asked, does it have to be registered anywhere? And the answer is, I gather, no. Correct. So you want legal existence, and what is the proof of that? Right. That would be as referenced in the statute, that agreement. We don't know when this agreement was reached or how or by whom. By two members, we don't have an identity of the second member. We don't have the identity of the manager referenced. Well, but the point of the litigant affidavit is that it's the same organization it was when this litigation started. That's why I called your attention to the paragraph. Well, I guess I question that, too. We've talked about this restructuring. I don't know what this restructuring is, what that means, whether it is the same entity or it's a successor. Well, it's not a dissolution. They said it's not a dissolution, and do you have any proof it is? I mean, I guess that's where I'm going with this. You have this one document that they have explained away, arguably. I recognize the affidavits and that there is some degree of explanation. I don't think it's sufficient for purposes of this Court assuring itself of standing given the plaintiff's burden, and I don't think it's sufficient on the merits so that even if it's sufficient in a summary judgment type sense, it's not ultimately sufficient on a merits type sense where the district has not had an opportunity to actually test the veracity of the statements in the affidavits. As I read your briefing, you claimed that the affidavits fell short, but you did not seek an opportunity to actually contest the facts in the affidavit. Do you see what I'm saying? Those are two different things. You rested on their failing to meet their burden. Well, we did both. Did you? In our brief, I mean, I don't remember necessarily which brief, but I think we pointed out that if this Court deemed the evidence sufficient, we would still request a remand in order to flesh out the facts underlying the issue. On this issue. On this issue. Not on the first amendment issue. On the issue of the existence of your organization. Yes, Your Honor. One second. I can pull up the thing, please. Yes, Your Honor. On page 14 of our reply and response brief, we do say alternatively, even if the affidavit might be sufficient, bearing in mind this affidavit that we're referencing is the one in Nass's brief, so this is our first opportunity to address that affidavit. Page 14, we say even if it's sufficient to show Nass's existence, a remand would be required for discovery and fact-finding in order to verify that existence. So we did specifically ask for that opportunity. And in fairness, since the district was not even permitted and sanctioned for attempting to take discovery below, we should be permitted some opportunity, I would submit. And then as far as the merits, I would just briefly say that the district, I think there was an acknowledgment here that the distinction that the district is attempting to draw through its regulations is a legitimate one. To the extent that there may need to be some limiting construction in order to save the regulation, that's fine. The courts of the District of Columbia, administrative and judicial, can supply those limiting constructions. Likewise, with respect to the vagueness challenge, those can be resolved. And as applied challenges, in the normal context in which law develops, it does not invalidate this regulation, just as it would not invalidate other regulations where there might be, you know, some questions about how it might be applied. So the district court has suggested some guidelines for the enforcement personnel. Do you know if any guidelines have been developed? Not that I'm aware of. I would point that the injunction went into place back in 2012. So under, for the past few years, we've been operating under a system where there's just one single across the board limit. But obviously, as I indicated, the district is aware that obviously there is going to be some process by which the law, the regulation is clarified, just like it is with respect to any regulation or any statute. So what's been happening since 2012? Well, if I want to put up a sign, is there any limit? So it's a 180-day limit. It's across the board limit. So you could put up a sign the day before an event, and it can be up for 179 days after. More than two years, the district's been operating under this six-month limit. Right? With event times as well as not event times. Right. Right. All signs stay up for six months. That's correct. Would it be relevant whether or not the district has any burden to show if there's been an aggravation of the litter or aesthetic problem? Yeah. I don't think that should be the district's burden at all. We've never been asked to carry it. I'm just trying to understand. The district court said it was self-evident, and in these other cases, there were actual findings by the district court where the city or the town has put some evidence forward. And I wonder, just for the last two years, everything is pretty much the same as it was before. Well, as I said, I don't think the district's been even asked to put on that burden. I don't think it would be proper for the district... No, I'm just curious about your view, because the district's position throughout this is that it had no burden to introduce any evidence whatsoever. Well, right, with respect to the particular interest here, because it is a rather straightforward, common-sense interest that even the district court recognized. And it is the legitimate choice of the district and its elected representatives to enact laws and regulations designed to protect the public interest, designed to protect the aesthetic interest, and that should be afforded some respect by the court, we would ask. Thank you. Thank you. Case under advisement.
judges: Rogers, Pillard, Sentelle